# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# JASPER DIVISION

| | |
|---|---|
| TINA FLIPPO, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 6:21-cv-01591-SGC |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | ) ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION[1]

The plaintiff, Tina Flippo, appeals from the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Doc. 1).[2] Flippo timely pursued and exhausted her administrative remedies, and the Commissioner's decision is ripe for review pursuant to 42 U.S.C §§ 405(g) and 1383(c)(3). For the reasons discussed below, the Commissioner's decision is due to be affirmed.

---

[1] The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 12).

[2] Citations to the record in this case refer to the document and page numbers assigned by the court's CM/ECF document management system and appear in the following format: (Doc. __ at __). Citations to the administrative record refer to the page numbers assigned by the Commissioner and appear in the following format: (Tr. at __).

## I. Background

### A. Statutory and Regulatory Framework

To establish eligibility for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a). A claimant must also show she was disabled between her alleged onset disability date and her date last insured. *Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 831 (11th Cir. 2011) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979)). The Social Security Administration ("SSA") follows a five-step analysis to determine whether an individual is eligible for disability benefits:

1. The Commissioner determines whether the claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled; otherwise, the Commissioner proceeds to the second step.

2. The Commissioner then determines whether the claimant suffers from a severe physical or mental impairment or combination of impairments that has lasted or is expected to last for a continuous period of at least twelve months. If there is no severe impairment, the claimant is not disabled; otherwise, the Commissioner proceeds to the third step.

3. Next, the Commissioner determines whether the Step 2 impairment meets or equals one of the "Listings" found in 20 C.F.R. Part 404, Subpart P, Appendix 1. If so, the claimant is disabled and the claim is granted; otherwise, the Commissioner determines the claimant's residual functional capacity ("RFC") and then proceeds to the fourth step.

4. The Commissioner then compares the claimant's RFC with the mental and physical demands of the claimant's past relevant work. If the claimant can perform past relevant work, the claimant is not disabled; otherwise, the Commissioner proceeds to the final step.

5. At the fifth step, the Commissioner determines whether the claimant can perform any other work that exists in substantial numbers in the national economy in light of the claimant's RFC, age, education, and work experience. If so, the claimant is not disabled, and the claim is denied. If not, the claimant is disabled, and the claim is granted.

*See* 20 C.F.R. §§ 404.1520(a), 404.1520(b), 416.920(a), 416.920(b) (Step 1); 20 C.F.R. §§ 404.1520(c), 416.920(c) (Step 2); 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926 (Step 3); 20 C.F.R. §§ 404.1520(e-f), 416.920(e-f) (Step 4); 20 C.F.R. §§ 404.1520(g), 416.920(g) (Step 5).

### B. Flippo's Alleged Disability and Medical Evidence

Flippo was 60 years old when she applied for DIB in 2020. (Tr. at 57). She completed the eighth grade and has past relevant work as a retail manager. (*Id.* at 280, 291). In 2019, she stopped working after suffering increased pain in her back and hip. (*Id.* at 45, 279). Flippo applied for benefits in January 2020, claiming she became disabled on June 30, 2019. (*Id.* at 279). Relevant to the issues in this appeal, the following medical evidence was submitted:

In February 2019, Dr. Jonathan Wright, with North Alabama Bone and Joint Clinic, reviewed a prior MRI that revealed multilevel degenerative disc disease with right-sided neuroforaminal stenosis at multiple levels (*Id..* at 393). Flippo reported this caused hip pain. (*Id.* at 392). Wright offered Flippo an injection in her right hip

and prescribed a back home exercise program. (*Id.* at 394). At a follow-up visit a few weeks later, Flippo reported the injection greatly helped her pain. (*Id.* at 398).

In May 2019, Flippo received another injection for hip pain. (*Id.* at 395). At a follow-up visit on June 25, 2019, just five days before her alleged onset date of disability, Flippo reported the May 2019 injection had essentially resolved her hip pain, and Dr. Wright recommended continuing conservative treatment. (*Id.* at 396).

Flippo saw Dr. Wright again in July 2019 and reported severe hip pain after work. (*Id.* at 389). At that visit, she was weightbearing and did not use an assistive device to walk. (*Id.*) She was assessed with lumbar spondylosis with radiculopathy and right hip bursitis and osteoarthritis. (*Id.* at 390). Dr. Wright recommended Flippo engage in a home exercise program and referred her to Dr. Stephen Howell for an epidural injection evaluation. (*Id.*).

Flippo saw Dr. Howell a few weeks later and reported severe pain in her lower pack that radiated to her right groin, down her leg, and to her knee. (*Id.* at 386). At that visit, Flippo did not use a walking device. (*Id.*). Imaging showed "greatly diminished" L5 disc space with loss of disc space height and stenosis. (*Id.* at 388). She was diagnosed with severe L5 degenerative disc disease with recurrent hip, back, and leg pain and sciatica with neurogenic claudication. (*Id.*). Flippo was not interested in therapy or chiropractic care at that time but wanted to proceed with an injection. (*Id.*). Dr. Howell gave Flippo a note for no prolonged standing at work and

scheduled another injection at the right sacroiliac joint for August 2019, which Flippo received. (*Id.* at 388, 408).

In August 2019, Flippo visited the emergency room of North Alabama Medical Center. (*Id.* at 426). She reported back pain and was in moderate distress. (*Id.* at 426-29). She was assessed with sciatica and prescribed a steroid and home exercises. (*Id.*). She again visited the emergency room in September 2019, reporting dull low back pain radiating down the right leg. (*Id.* at 420). Examination notes state she was not in acute distress. (*Id.* at 422). She had muscle spasms in her back, but her back was non-tender and was normal upon inspection. (*Id.*). Flippo had a painless and normal range of motion in her extremities and normal motor sensation. (*Id.*). She was again assessed with sciatica. (*Id.* at 423).

On October 8, 2019, imaging of both hips was mostly normal with a couple of subchondral cysts in the right acetabulum. (*Id.* at 418). Flippo visited the Bone and Joint Institute of Tennessee the following day. (*Id.* at 506-07). She was not in acute distress but reported low back and right groin pain and was using a cane. (*Id.*). According to Flippo, injections had not improved her pain, but she had started physical therapy, which helped. (*Id.*). She received another injection on October 31, 2019, and two weeks later she reported 100% improvement in groin and thigh pain. (*Id.* at 504-05). She was not in acute distress, had "mild" tenderness to palpation, and a "mildly" antalgic gait favoring her right leg. (*Id.* at 504). Treatment notes,

which do not show she was using a cane, indicated "mild" osteoarthritis of the right knee. (*Id.*). She was encouraged to resume a home exercise and stretching regime and to contact the office when she was ready for another injection. (*Id.*).

Throughout this period and through 2021, Flippo visited Dr. Wallace Purdy, her primary care doctor with West Jefferson Internal Medicine, and received mostly conservative treatment for her impairments. (*Id.* at 454-94).

- In January 2019, Flippo reported she was "hurting so bad [she could] hardly walk." (*Id.* at 465). She was suffering sciatic pain in her lower back and right hip that had started one week prior and did not improve with medication. (*Id.*). Dr. Purdy ordered an MRI which did not show a herniated disc. (*Id.* at 463, 466).

- In February 2019, Flippo reported she had received an injection in her hip that had helped the pain. (*Id.* at 463). She "seem[ed] to be a lot better" at that visit. Her musculoskeletal exam was normal. (*Id.* at 464).

- In May 2019, Flippo reported that her hip hurt and did not improve with medication. (*Id.* at 459). She had a normal musculoskeletal exam. (*Id.* at 460).

- In September 2019, Flippo reported low pack pain radiating into both her left hip and her right leg and calf with numbness. (*Id.* at 456). She had lumbar pain with active range of motion. (*Id.* at 457).

- In December 2019, Flippo reported an epidural block three weeks prior had improved her pain. (*Id.* at 454).

- In March 2020, Flippo again had lumbar pain with active range of motion. (*Id.* at 519).

- In June 2020, Flippo received a refill of pain medication but otherwise had a normal examination. (*Id.* at 515-16).

- In December 2020, Flippo's discomfort seemed to worsen, and Dr. Purdy increased her dosage of gabapentin and refilled another pain medication, Norco. (*Id.* at 511).

- In March 2021, Flippo again visited Dr. Purdy and reported she received a good bit of relief from the last pain block she received a few months prior. (*Id.* at 508). The pain block was starting to wear off, and she thought she might want another block. (*Id.*). Dr. Purdy refilled her pain medication and filled out a handicap parking form for her. (*Id.*).

When consultive examiner Dr. Laura Lindsey examined Flippo in March 2020, Flippo reported intermittent lower back pain radiating down her leg, worsened by standing and walking and improved by sitting. (*Id.* at 496). She was not in acute distress and had full range of motion of her spine and all extremities. (*Id.* at 496-99). Flippo walked normally without any assistive device, was able to get in and out of chairs and on and off the exam table without help or difficulty, and could squat and perform heel-to-toe walking without difficulty. (*Id.* at 499). In Dr. Lindsey's opinion, Flippo did not appear limited by her medical conditions and could independently sit, stand, walk, carry, lift and travel. (*Id.*).

State agency medical consultant Dr. Gloria Sellman opined that Flippo's impairments would be expected to produce significant pain, but she noted exam records contradicted her claim that she had difficulty performing exertional activities and required an assistant device to walk. (*Id.* at 64). According to Dr. Sellman, Flippo could stand and sit for about six hours in an eight-hour workday. (*Id.* at 65).

State agency medical consultant Dr. Thomas Amason, M.D., essentially adopted Dr. Sellman's opinion at the initial level. (*Id.* at 98).

Flippo's application for benefits was denied, and she requested a hearing before an ALJ. (*Id.* at 118, 143). At the April 2021 hearing, Flippo testified she could not work because she "was in severe pain." (*Id.* at 45). She stated she could stand for about thirty minutes before she had to sit back down and would lie down for about an hour a day to relieve her pain. (*Id.* at 49, 50). When asked about her daily living activities, Flippo testified that she washed her clothes, made her bed, made something to eat, and cleaned up the kitchen, but it hurt to do those things and her aunt assisted her as needed. (*Id.* at 48-49). Other than seeing her primary care physician every three months, she had not visited any other doctor or emergency room because she lacked insurance. (*Id.* at 46).

### C. The ALJ's Decision

Following the hearing, the ALJ denied Flippo's claim. (*Id.* at 21-33). The ALJ first found Flippo met the SSA's insured requirements through September 30, 2023 and did not engage in substantial gainful activity after the alleged onset date of June 30, 2019. (*Id.* at 23). At the second step, the ALJ determined Flippo had the following severe impairments: osteoarthritis/degenerative joint disease of the right hip, degenerative disc disease of the lumbar spine, and obesity. (*Id.* at 25). At the

8

third step, the ALJ determined Flippo's impairments did not meet or medically equal the severity of one of the Listings. (*Id.* at 27).

Before proceeding to the fourth step, the ALJ found Flippo's impairments could reasonably be expected to cause her alleged symptoms but her statements about the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. (*Id.* at 28). The ALJ determined Flippo had the following RFC:

> [Flippo can] perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except [she] can frequently balance. She cannot climb ropes, ladders, or scaffolds. All other postural maneuvers are occasional. She should avoid concentrated exposure to hot or cold temperature extremes and extreme vibrations. She should avoid dangerous, moving, unguarded machinery or unprotected heights.

(*Id.* at 27, 28). The ALJ concluded the record, which contained little objective evidence, reflected mostly conservative treatment of medication and injections, with no surgical intervention, for Flippo's hip and back pain. (*Id.* at 28, 31). Although Flippo used a cane at one examination, there was no medical prescription, and the record did not otherwise reflect a need for a cane. (*Id.* at 31). The most recent records showed normal musculoskeletal exams, and Dr. Lindsey found her to be essentially normal with no limitations. (*Id.*).

The ALJ found persuasive Dr. Sellman's opinion that Flippo could perform work-related activities within a limited range of light exertion. (*Id.* at 32). She also found persuasive Dr. Amason's opinion, which essentially adopted that of Dr.

Sellman. (*Id.*). She found generally persuasive Dr. Lindsey's opinion that Flippo did not appear limited by her medical condition but found the full record supported a finding of some work-related limitations. (*Id.*). The ALJ found somewhat persuasive Dr. Wright's opinion that Flippo could not engage in prolonged standing at work but discounted Dr. Wright's opinion because he did not have access to all the evidence available at the hearing level. (*Id.*).

At the fourth step, the ALJ found Flippo could perform her past relevant work as a retail manager because it did not require her to perform work activity precluded by her RFC. (*Id.* at 32). Because Flippo could perform past relevant work, the ALJ concluded she was not disabled. (*Id.* at 33).

The Appeals Council denied review of the ALJ's decision (*Id.* at 1-6), and that decision became the final decision of the Commissioner. *See Fry v. Massanari*, 209 F. Supp. 2d 1246, 1251 (N.D. Ala. 2001) (citing *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)). Thereafter, Flippo filed this action. (Doc. 1).

## II. Standard of Review

A court's role in reviewing claims brought under the Social Security Act is narrow. Its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d

1155, 1158 (11th Cir. 2004)). A court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but closely scrutinizes the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). A district court reviews the Commissioner's legal conclusions *de novo*. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

## III. Analysis

Flippo brings only one challenge to the ALJ's decision: whether she properly evaluated Flippo's complaints of pain consistent with the Eleventh Circuit's standard. (Doc. 13 at 5). Flippo contends the ALJ did not consider the complete medical record. In response, the Commissioner argues the ALJ's determination was supported by substantial evidence.

Standing alone, Flippo's subjective complaints of pain are insufficient to establish a disability. *See* 20 C.F.R. §§ 404.1529(a), 416.926(a); *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991). Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). The Eleventh Circuit applies a two-part pain standard when a plaintiff claims disability

11

due to pain or other subjective symptoms. The plaintiff must show evidence of the underlying medical condition and either (1) objective medical evidence that confirms the severity of the alleged symptoms arising from the condition or (2) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged symptoms. *See* 20 C.F.R. §§ 404.1529(a), (b), 416.929(a), (b); *Soc. Sec. Ruling 16-3p: Titles II & XVI: Evaluation of Symptoms in Disability Claims*, SSR 16-3P (S.S.A. Mar. 16, 2016); *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).

If the objective medical evidence does not confirm the severity of the plaintiff's alleged symptoms but the plaintiff establishes she has an impairment that could reasonably be expected to produce her symptoms, the ALJ must evaluate the intensity and persistence of the plaintiff's alleged symptoms and their effect on her ability to work. *See* 20 C.F.R. §§ 404.1529(c), (d), 416.929(c), (d); SSR 16-3p; *Wilson*, 284 F.3d at 1225−26. To discredit a plaintiff's statements, the ALJ must clearly "articulate explicit and adequate reasons." *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). "The question is not . . . whether [the] ALJ could have reasonably credited [Flippo's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

A credibility determination is a question of fact subject only to limited review in the courts to ensure the finding is supported by substantial evidence. *See Hand v.*

*Heckler*, 761 F.2d 1545, 1548−49 (11th Cir. 1985), *vacated for rehearing en banc*, 774 F.2d 428 (11th Cir. 1985), *reinstated sub nom.*, *Hand v. Bowen*, 793 F.2d 275 (11th Cir. 1986). Courts in the Eleventh Circuit will not disturb a clearly articulated finding supported by substantial evidence. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). However, a reversal is warranted if the decision contains no indication of the proper application of the pain standard.

Here, the ALJ reviewed the complete medical record to support her conclusion, and substantial evidence supports her decision. The ALJ determined Flippo had an underlying medical condition but the objective medical evidence contradicted the severity of her reports of disabling pain. Despite Flippo's claims of severe pain, physicians continually recommended conservative treatment with medication, injections, chiropractic care, and physical therapy. *See Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996) (noting a history of conservative treatment can be a factor in evaluating a claimant's testimony); *Hantzis v. Colvin*, No. 8:13-CV-1711-T-17MAP, 2014 WL 12693222, at *3 (M.D. Fla. July 22, 2014), *aff'd sub nom. Hantzis v. Comm'r of Soc. Sec.*, 686 F. App'x 634 (11th Cir. 2017) ("In general, conservative treatment for back pain includes any treatment option that does not involve surgery."); 20 C.F.R. §§ 404.1529(c)(3)(v), 416.929(c)(3)(v). Additionally, the ALJ emphasized that despite Flippo's allegations of disabling pain, the record reflected that from 2020 forward, she visited only her primary care physician four

13

times a year, and those exams were essentially normal. *See* 20 C.F.R. §§ 404.1529(c)(3)(v), (vi), 416.929(c)(3)(v), (vi) (noting that a claimant's treatment and measures used to relieve pain can be considered). Further, Dr. Purdy's treatment notes indicated Flippo regularly reported her pain was improved by injections.

Flippo argues she pursued conservative treatment because one of her doctors, Dr. Adderholt, told her nothing could be done for her surgically. This medical opinion, however, does not appear in the record other than Flippo's recounting it, and the record contains no medical evidence confirming that opinion. In any event, Flippo usually reported improvement in her pain with the conservative treatment prescribed. *See, e.g., Coley v. Comm'r of Soc. Sec.*, 771 F. App'x 913, 920 (11th Cir. 2019) (regarding a claim that the ALJ's consideration of conservative treatment history was improper because the claimant could not afford more aggressive treatment, medical records gave no indication that more aggressive treatment was necessary and to the contrary showed that conservative treatment was effective).

The record does demonstrate Flippo used a cane at one exam and sometimes reported that medication and injections did not resolve the pain. Other evidence, however, demonstrates Flippo usually walked without assistance,[3] climbed up and down the examination table without assistance, usually had full range of motion,

---

[3] Of the many doctor's visits documented in the record, treatment notes show Flippo used a cane at only one.

displayed a normal gait, and did not appear in acute or apparent distress when she presented for medical exams. In addition, no medical opinion of record supported a conclusion that Flippo was unable to work. Only one medical opinion potentially indicated limitations—Dr. Howell's note that Flippo should not engage in prolonged standing at work.

The question here is not whether the ALJ could have reasonably credited Flippo's testimony but whether the ALJ was clearly wrong to discredit it. *Werner*, 421 F. App'x at 939. She was not. Instead, she articulated in detail her findings that Flippo's subjective complaints were inconsistent with the medical evidence of record, and substantial evidence supports her determination that Flippo's pain was not disabling as she claimed.

## IV.  Conclusion

Upon review of the administrative record and considering all of Flippo's arguments, the court finds the Commissioner's decision is supported by substantial evidence and is in accord with applicable law. Accordingly, the Commissioner's decision is due to be affirmed.

A separate order will be entered.

**DONE** this 23rd day of March, 2023.

STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE